UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
FLAT RATE MOVERS, LTD.
(d/b/a FLATRATE MOVING)

                    Plaintiff,              OPINION

        -against-                           13 CV 0059 (MGC)


FLATRATE MOVING & STORAGE, INC.;
MOSHE ALUSH a/k/a MOSHE ALOSH,
MOSHE ALOUSH; ELIYAHU ALUSH a/k/a
ELIYAHU ALOSH, ELIYAHU ALOUSH; and
ITZHAK ALUSH a/k/a ITZHAK ALOSH,
ITZHAK ALOUSH, YITZHAK ALUSH,
YITZHAK ALOSH, YITZHAK ALOUSH,

                    Defendants.

---------------------------------X

APPEARANCES:

          CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
          Attorneys for Plaintiff

          By:  Jonathan J. Walsh, Michael Graif, Alyssa J. Astiz


          Neil Grimaldi, Esq.
          Attorney for Defendants


**Cedarbaum, J.**

    FlatRate Movers, Ltd. (d/b/a FlatRate Moving) brings this

suit against FlatRate Moving & Storage, Inc., Moshe Alush,

Eliyahu Alush, and Itzhak Alush for trademark infringement,

unfair competition, and cybersquatting.  Plaintiff moves for

summary judgment.  That motion is granted in part and denied in part.

BACKGROUND

As an initial matter, Defendants failed to submit a response to Plaintiff's Local Rule 56.1 statement of undisputed facts.  Plaintiff's 56.1 statement is therefore deemed admitted to the extent it is supported by the record.  <u>Nike, Inc. v. Top Brand Co. Ltd.</u>, 2005 WL 1654859, at *2 (S.D.N.Y July 13, 2005). Further, although Defendants' opposition to Plaintiff's motion lacks substance (consisting only of a brief that cites no cases, a conclusory declaration, and irrelevant attachments), the Court nonetheless has closely scrutinized Plaintiff's arguments on its own.

Turning to the undisputed facts, Plaintiff is a moving and storage services company that has operated nationwide as "FLATRATE MOVING" since 1991.  Prior to providing moving services, Plaintiff presents customers with a guaranteed, or "flat," rate for the service.

On October 18, 2002, Plaintiff applied to register as its trademark "FLATRATE. MOVING & Design."  The trademark was registered (No. 2910322) on December 14, 2004, and became incontestable on January 26, 2010.

On September 20, 2006, Plaintiff applied to register as its trademark "FLATRATE MOVING & Design."  The trademark was

2

registered (No. 3270882) on July 31, 2007, and became incontestable on August 20, 2012.

On September 7, 2010, Plaintiff applied to register as its trademark "FLATRATE MOVING."  That trademark was registered (No. 4051739) on November 8, 2011.

Prior to registering the three trademarks, the U.S. Patent and Trademark Office accepted Plaintiff's showing that each mark enjoyed acquired distinctiveness in the market.

Plaintiff purchased the website "flatrate.com" in 1995 and has operated under it for business purposes since 1998. Plaintiff has spent millions of dollars over the years to advertise its business, and won awards for quality service. Plaintiff's website, as well as its ninety trucks, displays its registered trademark:



Plaintiff asserts that the individual defendants Moshe Alush, Eliyahu Alush, and Itzhak Alush jointly own and operate the corporate defendant, FlatRate Moving & Storage, Inc.  The company consists of the three brothers, two secretaries, and five movers.  At deposition, Eliyahu Alush stated that he owns and manages the company, describing it as a "family business." Moshe Alush also stated that he owns the company.  Itzhak Alush filed the company's initial articles of incorporation in 2003,

and was, at least at one point, an owner as well.  Both Eliyahu
and Moshe have been in charge of the company's advertising and
website over the years.

Defendants did not perform any trademark searches or
consult with an attorney before adopting their business name.
The company operates in Maryland, Virginia, and New York, among
other areas.  It sells moving services both at guaranteed flat
rates and at hourly rates.  Defendants offer moving services
through the website "flatratemovers.com," which they purchased
in 2001.  Each of the three individual defendants also purchased
at least one of the following domain names at various times
after 2004:  flatratemove.com, flatratemovingcompanies.com,
flatratemovingestimates.com, flatratemovingestimats.com,
flatratemovingestimate.com, and flatratemovingestimat.com.
Defendants conduct their moves using trucks that display the
name "FLAT RATE MOVERS".  The defendant corporation lost its
corporate status under Maryland law in 2009 but continues to
operate.

Defendants' company name is displayed on their website as
follows:



Multiple customers of Plaintiff have mistakenly attributed
Defendants' unsatisfactory services to Plaintiff because the

customers confused the two companies.  Multiple customers have accidentally contacted Defendants when intending to book another move with Plaintiff.  In two instances, a customer of Plaintiff erroneously contacted Defendants for a second move.  The customers informed Defendants that they were repeat customers (although they had not moved with Defendants previously), but Defendants did not correct their assumptions.  Finally, in another instance, Defendants gave a disgruntled customer Plaintiff's phone number in order for that individual to voice a complaint.[1]

Plaintiff previously sued defendant FlatRate Moving & Storage, Inc. for trademark infringement in the District of Maryland in 2004.  At deposition in that case, Eliyahu Alush stated that that his company did not use the "FLAT RATE" name on its trucks to perform moves in New York in order to avoid confusion with Plaintiff.  Eliyahu Alush also stated that, again to avoid confusion, another name was registered for his company: "Tiptop Movers."  The Maryland case was discontinued and dismissed without prejudice.

---

[1] Plaintiff's evidence of complaints is submitted mostly through emails between Plaintiff's employees reporting on conversations with customers.  Such hearsay evidence is admissible to show the customer's state of mind (i.e., confusion) under Federal Rule of Evidence 803(3).  See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 1004 (2d Cir. 1997).  Additionally, Plaintiff does submit two declarations directly from customers.

Plaintiff has continued performing moves using trucks displaying the name "FLAT RATE MOVERS" even after commencement of this lawsuit.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  Matthews v. City of New York, 779 F.3d 167, 171 (2d Cir. 2015).  The non-moving party may not, however, rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted).  Instead, when the moving party has documented particular facts in the record, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010).

DISCUSSION

## I. FEDERAL TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION[2]

Claims of trademark infringement, 15 U.S.C. § 1114(1), and unfair competition, 15 U.S.C. § 1125(a), are evaluated under the same two-part test: (1) is plaintiff's mark entitled to protection, and (2) is defendant's use of the mark likely to cause confusion.  Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 390 & n.4 (2d Cir. 1995).

Here, Plaintiff's three marks are registered and entitled to protection in the absence of other evidence.  15 U.S.C. § 1057(b).  The analysis thus focuses on the confusion prong.

### A. Polaroid Factors

Consumer confusion is evaluated using eight factors articulated in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961):  (1) the strength of the mark; (2) the similarity between the marks; (3) the proximity of the products; (4) the likelihood that the prior owner will bridge the gap; (5) actual confusion; (6) the defendant's good faith; (7) the quality of defendant's product; and (8) the sophistication of the buyers.

---

[2] Plaintiff also, mysteriously, asserts a claim for "counterfeiting" under what it labels "15 U.S.C. § 1114(c)" -- a nonexistent statutory provision.

### i. **Strength of the mark**

This factor refers to a mark's distinctiveness, both inherently, and in the marketplace (i.e. "secondary meaning"). <u>Streetwise Maps, Inc. v. VanDam, Inc.</u>, 159 F.3d 739, 743 (2d Cir. 1998). Marks are divided into four categories of increasing distinctiveness: generic, descriptive, suggestive, and arbitrary or fanciful. <u>Arrow Fastener Co. v. Stanley Works</u>, 59 F.3d 384, 391 (2d Cir. 1995). A "descriptive" mark -- as opposed to one that is merely "suggestive" of the actual features of a product -- is protected only if it has acquired secondary meaning. <u>Id.</u> Secondary meaning is gauged by factors such as advertising, consumer studies, sales, competitors' attempts to use the mark, and length of the mark's use. <u>Id.</u> at 393.

If, however, a mark is registered, its distinctiveness is presumed. <u>Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.</u>, 799 F.2d 867, 871 (2d Cir. 1986). That is, registration creates a rebuttable presumption that a descriptive mark enjoys secondary meaning. <u>Arrow Fastener</u>, 59 F.3d at 393.

Plaintiff's marks are descriptive. Little imagination is required to realize that "FLATRATE MOVING" refers to moving services offered at a fixed price. <u>See, e.g.</u>, <u>Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.</u>, 887 F. Supp. 2d 519, 533 (S.D.N.Y. 2012) ("Illustrative examples of descriptive marks

8

are: P.M. for sleep-aid medication, POWER CHECK for batteries
that enable one to check the remaining power level, and REAL
NEWS for news reporting."). However, the marks are registered,
and Plaintiff made a showing of secondary meaning at the time of
registration. Two of the three marks are incontestable. Thus
Plaintiff's marks enjoy a presumption of distinctiveness.

In addition, Plaintiff has submitted evidence to this Court
of secondary meaning. Plaintiff has used these marks for over
twenty years and spent millions of dollars in advertising. The
business has won awards for quality service. The strength-of-
the-mark factor favors Plaintiff.

### ii. Similarity between the marks

"To apply this factor, courts must analyze the mark's
overall impression on a consumer, considering the context in
which the marks are displayed and the totality of factors that
could cause confusion among prospective purchasers." Malletier
v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537
(2d Cir. 2005) (internal quotation marks omitted).

There is a high degree of similarity between Plaintiff's
"FLATRATE MOVING" and Defendants' "FLAT RATE MOVERS Moving &
Storage." Although the colors and styles are different, the
actual brand name -- "FLATRATE" -- is the same. That
Plaintiff's mark is "FLATRATE MOVING" versus "FLAT RATE MOVERS"
is of little significance. "When the dominant words in two

marks are the same, courts have found that their similarity can cause consumer confusion." Lebewohl v. Heart Attack Grill LLC, 890 F. Supp. 2d 278, 294 (S.D.N.Y. 2012) ("Heart Attack Grill" and "Instant Heart Attack Sandwich" were similar).  A consumer seeking a phone number for a moving service called "FLATRATE" is unlikely to recall the difference between "MOVING" and "MOVERS," or the difference between "FLATRATE" and "FLAT RATE."  This "similarity is more likely than not to cause consumer confusion." Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 133 (2d Cir. 2004).

### iii.  Proximity of the products

"This factor focuses on whether the two products compete with each other." Lang v. Ret. Living Pub. Co., 949 F.2d 576, 582 (2d Cir. 1991).

Plaintiff and Defendants both offer guaranteed fixed rate moving services.  Plaintiff operates nationally, and Defendants operate in New York, Maryland, Virginia, and other states.  Both companies allow customers to book moves online.  Thus, at least in the states where Defendants operate, the two companies are substitutes.  This factor favors Plaintiff.

### iv.  The likelihood that the prior owner will bridge the gap

This factor concerns the likelihood that Plaintiff will enter the same market as Defendants.  Star Indus., Inc. v.

Bacardi & Co., 412 F.3d 373, 387 (2d Cir. 2005).  Because the
two companies already operate in the same product and geographic
markets, there is "no gap to bridge," and this factor is
irrelevant.  Id.

### v. **Actual confusion**

Evidence of actual consumer confusion is strong evidence of
a likelihood of confusion.  Mobil Oil Corp. v. Pegasus Petroleum
Corp., 818 F.2d 254, 259 (2d Cir. 1987).

Plaintiff submits such evidence.  Thinking that the
companies were the same, many customers have mistakenly
attributed Defendants' unsatisfactory services to Plaintiff.
Many customers intending to hire Plaintiff have accidentally
contacted Defendants instead.  Two customers of Plaintiff
erroneously contacted Defendants for a second move, and
Defendants took advantage of the customers' mistakes.  In
another instance, Defendants gave a disgruntled customer the
phone number of Plaintiff in order to voice a complaint.

This actual confusion strongly favors Plaintiff.

### vi. **Defendant's good faith**

A defendant exhibits bad faith by "adopt[ing] its mark with
the intention of capitalizing on plaintiff's reputation and
goodwill and any confusion between his and the senior user's
product."  Lang, 949 F.2d at 583 (internal quotation marks
omitted).  "Bad faith may be inferred from the junior user's

actual or constructive knowledge of the senior user's mark,"
Star Indus., 412 F.3d at 389, although such knowledge does not,
"without more, create an inference of bad faith," Playtex
Products, Inc. v. Georgia-Pac. Corp., 390 F.3d 158, 166 (2d Cir.
2004).  Good faith can be shown through performance of a
trademark search or reliance on the advice of counsel prior to
adopting a mark.  Star Indus., 412 F.3d at 388.

Courts have found, on summary judgment, a defendant's bad
faith where "a defendant receives a cease and desist letter but
continues the infringing conduct," Fendi Adele S.R.L. v.
Burlington Coat Factory Warehouse Corp., 689 F. Supp. 2d 585,
600 (S.D.N.Y. 2010); see also Microban Products Co. v. API
Indus., Inc., 2014 WL 1856471, at *8 (S.D.N.Y. May 8, 2014), and
where a defendant fails to correct a third party's erroneous
belief about the relationship between the defendant and the
plaintiff, Warner-Lambert Co. v. Schick U.S.A., Inc., 935 F.
Supp. 130, 141 (D. Conn. 1996).

Defendants did not perform a trademark search or consult
with an attorney before adopting their business name in 2003 (at
which time Plaintiff's application was pending).  There is no
doubt Defendants actually knew of Plaintiff's mark -- at the
latest -- in 2004 when Plaintiff first brought suit in Maryland.
Defendant Eliyahu Alush admitted in sworn testimony in that case
that his company name could cause confusion with Plaintiff.

12

Defendants registered an additional name for their company, "Tiptop Movers," in order to avoid such confusion.  Defendants nonetheless continued to provide moving services using the "FLAT RATE" name in New York and elsewhere after that suit, see Aztar Corp. v. NY Entm't, LLC, 15 F. Supp. 2d 252, 260 (E.D.N.Y. 1998) (defendant misrepresenting steps taken to avoid confusion was evidence of bad faith on summary judgment), aff'd, 210 F.3d 354 (2d Cir. 2000), as well as after commencement of the instant lawsuit.

In addition, Plaintiff submits an affidavit from its customer who accidentally called Defendants for a subsequent move and informed Defendants multiple times that he was a repeat customer, even asking for a returning customer discount. Although Defendants had never done business with the individual, in an attempt "to exploit the goodwill created by" Plaintiff's marks, Warner-Lambert, 935 F. Supp. at 141, Defendants did not disabuse him of his assumption.

Plaintiff has thus presented evidence -- beyond Defendants' knowledge of Plaintiff's marks -- of bad faith.  Defendants continued using the "FLAT RATE" name even after acknowledging that it would confuse customers and after commencement of this lawsuit.  They have knowingly taken advantage of at least one confused customer.  Defendants have not responded with any facts that show good faith.

13

The bad faith factor therefore favors Plaintiff.

### vii. Quality of defendant's product

"[W]here the junior user's [service] is approximately the same quality as the senior user's, there is a greater likelihood of confusion." Savin Corp. v. Savin Grp., 391 F.3d 439, 461 (2d Cir. 2004). Plaintiff has argued the opposite here -- that Defendants offer inferior moving services. This fact makes consumers less likely to confuse Defendants' services with Plaintiff's higher-quality offering.

### viii. Sophistication of the buyers

The more sophisticated the purchaser, the less likely that she will be confused by similar marks. Savin, 391 F.3d at 461. Purchasers of higher cost goods or services are presumed to be more discriminating. Id. There is no indication that Plaintiff's customers are of any particular sophistication level. This factor is neutral.

### B. Balancing

Based on the weight of the Polaroid factors, consumer confusion is likely here. Five of the eight factors fall in Plaintiff's favor, and only one factor supports Defendants. Especially important is the significant evidence of actual customer confusion. Plaintiff's motion for summary judgment is granted as to the federal trademark infringement and unfair competition claims.

14

## II. STATE COMMON LAW

"The elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." Kaplan, Inc. v. Yun, 2014 WL 1689040, at *351 (S.D.N.Y. Apr. 30, 2014) (internal quotation marks omitted). A claim of unfair competition under New York law additionally requires evidence of defendant's bad faith. Id. As discussed, Plaintiff has shown Defendants' bad faith with respect to federal trademark infringement. Plaintiff's motion for summary judgment is granted on the state trademark infringement and unfair competition claims.

## III. FEDERAL CYBERSQUATTING

"Cybersquatting involves the registration as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners." Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc., 202 F.3d 489, 493 (2d Cir. 2000). A claim under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), requires a showing that the marks in question (1) "were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark." Elastic Wonder, Inc. v. Posey, 2015 WL 273691, at *5 (S.D.N.Y. Jan. 22, 2015).

A "bad faith intent to profit" is a term of art in the statute and cannot be equated with "bad faith" in other contexts (such as trademark infringement). Sporty's, 202 F.3d at 499 n.13. A plaintiff must show that the defendant's use of the domain name is "an attempt to profit specifically from 'squatting' on the domain name with bad faith," rather than "simply . . . another aspect of the alleged trademark infringement." Kaplan, 2014 WL 1689040, at *351. The statute outlines nine nonexclusive factors to be taken into account in determining the infringer's bad faith, 15 U.S.C. § 1125(d)(1)(B)(i), in addition to the "unique circumstances" of the case, Sporty's, 202 F.3d at 499.

The anticybersquatting statute was created to address "the Internet version of a land grab," Lewittes v. Cohen, 2004 WL 1171261, at *8 (S.D.N.Y. May 26, 2004), and not as "an all-purpose tool designed to allow the holders of distinctive marks the opportunity to acquire any domain name confusingly similar to their marks," Gioconda Law Grp. PLLC v. Kenzie, 941 F. Supp. 2d 424, 437 (S.D.N.Y. 2013). Thus, through the intent requirement, "Congress [has] shielded from liability" even some "conduct that might annoy or frustrate mark holders." Id.

Plaintiff has not proven as a matter of law the specific bad faith intent by Defendants required for a cybersquatting claim. No evidence has been presented with respect to Defendants'

16

intent in registering their domain names.  Plaintiff does not even assert that Defendants had knowledge of Plaintiff's marks before Defendants purchased "flatratemovers.com" in 2001.

Even though Defendants had such knowledge when registering subsequent domain names, that fact is insufficient to show that Defendants "squatted" with bad faith intent.  See Kaplan, 2014 WL 1689040, at *351 (dismissing cybersquatting claim that alleged only knowledge of Plaintiff's mark).  Here, "[a] reasonable factfinder could conclude that [Defendants were] not trying to extort a particular (or any) trademark holder."  Cello Holdings, L.L.C. v. Lawrence-Dahl Companies, 89 F. Supp. 2d 464, 474 (S.D.N.Y. 2000) (finding a genuine issue of material fact as to cybersquatting claim).

## IV. LIABILITY OF INDIVIDUAL DEFENDANTS

Personal liability is appropriate for an individual who is a "moving, active, conscious force" behind the trademark infringement.  Elastic Wonder, 2015 WL 273691, at *4. Individuals may be liable even if their exact corporate title is unknown.  Id.; Chloe v. Queen Bee of Beverly Hills, LLC, 2011 WL 3678802, at *6 (S.D.N.Y. Aug. 19, 2011).

Both Eliyahu Alush and Moshe Alush have stated that they are owners of the corporation.  Both men have admitted their responsibility for advertising the company's infringing marks

over the years and overseeing the website.  They are therefore personally liable for the infringement.

The third individual defendant, Itzhak Alush, is alleged to have incorporated the company in 2003 and to be an owner.  He purchased one of the company's Internet domain names.  Plaintiff presents no other evidence as to his active role.  There is a question of fact as to his involvement in the infringement.  See Eu Yan Sang Int'l Ltd. v. S & M Enterprises (U.S.A.) Enter. Corp., 2010 WL 3824129, at *3 (E.D.N.Y. Sept. 8, 2010) (no personal liability for trademark infringement where "record is silent . . . as to the extent of [the individual's] involvement in and control over [the company's] decision making").

**V. ASSERTED DEFENSES**

Defendants mention several defenses in wholly conclusory fashion.  Two warrant brief discussion.  The first is laches. Laches is an equitable defense to injunctive relief where a plaintiff fails to bring its action in a timely manner.  "The determination of whether laches bars a plaintiff from equitable relief is entirely within the discretion of the trial court." Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V., 17 F.3d 38, 44 (2d Cir. 1994).

It is well established that "laches is not a defense against injunctive relief when the defendant intended the infringement."  Hermes Int'l v. Lederer de Paris Fifth Ave.,

<u>Inc.</u>, 219 F.3d 104, 107 (2d Cir. 2000).  Here, Defendants' bad faith infringement has been shown and, as a result, laches is unavailable to them.

The second defense is prior use.  Defendants state that they began using the "FLAT RATE" name in 2003.  Plaintiff applied for its trademark in 2002, however, which creates its right of priority as of that date.  15 U.S.C. § 1057(c).

**VI. INJUNCTIVE RELIEF**

Although an injunction need not necessarily follow from a finding of trademark infringement, <u>see</u> <u>Beastie Boys v. Monster Energy Co.</u>, 2015 WL 736029, at *3 (S.D.N.Y. Feb. 20, 2015), the traditional four-factor test required for injunctive relief is easily met here, <u>see</u> <u>id.</u>, and does not require in-depth discussion.

Accordingly, pursuant to 15 U.S.C. § 1116(a), defendants FlatRate Moving & Storage, Inc., Moshe Alush, Eliyahu Alush, and all affiliates, shall:

> be enjoined from using "FLAT RATE MOVERS," "FLAT RATE MOVING," or any other confusingly similar words, in connection with moving and storage services, which includes ending the use of any Internet domain names that incorporate the word "FLATRATE" in connection with moving and storage services; and

> file with the Court and serve on Plaintiff, within thirty days after entry and service of this injunction, a sworn report detailing compliance with the injunction.

**CONCLUSION**

Plaintiff's motion for summary judgment as to the federal and New York state trademark infringement and unfair competition claims is granted against all Defendants except Itzhak Alush. Summary judgment is denied on the cybersquatting claim. Injunctive relief is granted as described above.

Within ten days, Plaintiff shall inform the Court whether it seeks a trial on the outstanding claims, or whether it seeks to proceed directly to a damages inquest based on the resolved claims.

SO ORDERED.

Date:     New York, New York
          April 22, 2015

                              S/_____
                                   MIRIAM GOLDMAN CEDARBAUM
                                   United States District Judge